UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SEPTIMUS SCOTT,

                          Plaintiff,

v.

Case # 17-CV-6359-FPG

DECISION AND ORDER

THE CITY OF ROCHESTER, a municipal entity,
POLICE OFFICER JEFFREY KESTER, IBM # 2230,
POLICE OFFICER DESTINY DETERVILLE,
IMB # 2224, LIEUTENANT NASER ZENELOVIC,
and Police Officers "JOHN DOES 1-10"
(names and number of whom are unknown at present),
and other unidentified members of the
Rochester Police Department,

                          Defendants.

**INTRODUCTION**

On May 24, 2015, Plaintiff Septimus Scott drove to a bar in Rochester to pick up some friends. After exiting the parking lot of the bar, Scott was pulled over by Defendant Police Officers Jeffrey Kester and Destiny Deterville and Defendant Lieutenant Zenelovic and arrested for the alleged violations of various criminal statutes. During the arrest, the named Defendants mistreated Scott. Some time later, all the charges brought against Scott were dismissed or dropped. This lawsuit followed.

Scott filed an initial complaint on June 7, 2017, and then filed an amended version on September 8, 2017. ECF Nos. 1, 16. The latter contains eleven claims, only five of which are relevant here: the first, for a general "deprivation of federal civil rights under 42 U.S.C. § 1983, the fifth, for negligence by Defendant City of Rochester under New York law, and the ninth through eleven, for three separate theories of liability against the City under *Monell v. Dep't of*

*Soc. Servs.*, 436 U.S. 658, 694 (1978). *See* ECF No. 16. On October 5, 2017, Defendants moved to dismiss those five claims. *See* ECF Nos. 19-20. For the reasons stated, Defendants' Motion is GRANTED.

## BACKGROUND[1]

At approximately 2:00 a.m. on May 24, 2015, one of Scott's friends contacted him and asked him to pick him up at Masons on Alexander, a bar in downtown Rochester. *See* ECF No. 16 ¶ 31. Scott obliged; he drove to the location and parked in the parking lot adjacent to Masons. *See id.* ¶ 32. After his friends entered the car, he exited the lot by turning left onto Andrews Street and drove north. *Id.* ¶ 33.

The parking lot mentioned has two exits: one onto Andrews Street on the east side of the lot and one onto Shuart Street on the north. Shuart Street is a one-way street; a driver must proceed west if he exits the lot onto Shuart Street, leading the driver to Lawrence Street. If a driver exits the lot to the north and turns right onto Shuart Street heading east, he has a short trip to reach Andrews Street. Of course, doing so violates traffic laws, since a driver may only drive west on Shuart Street away from Andrews Street.

Zenelovic allegedly saw Scott take the illegal course onto Andrews Street via Shuart Street and, consequently, pulled him over. *See id.* ¶ 35. Deterville and Kester arrived several minutes after Zenelovic stopped Scott. *See id.* ¶ 38.

Scott is a veteran of the U.S. Army, in which he served as a combat engineer in Djibouti, Africa. *Id.* ¶ 28. While serving, Scott was injured by an improvised explosive device during a transport mission and was subsequently diagnosed with post-traumatic stress disorder. *Id.* ¶ 29.

---

[1] The Court takes the following allegations from Scott's Amended Complaint, ECF No. 16, and accepts them as true. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

As a result of his PTSD diagnosis, Scott began to experience a panic attack after Zenelovic pulled him over. ECF No. 16 ¶ 36. Scott informed Zenelovic, Deterville, and Kester of his PTSD and the panic attack during the encounter. *Id.* ¶¶ 36, 38, 48.

After Scott was stopped, Deterville had him perform field sobriety tests, all of which he passed. *Id.* ¶¶ 41-42. She then attempted to administer a breathalyzer test to Scott, but had difficulty doing so. *Id.* ¶¶ 44-46. Kester aggressively told Scott to blow into the breathalyzer and, when he demurred, Kester grabbed his head and slammed his face into the side of a police cruiser. *Id.* ¶¶ 47-49. Kester proceeded to throw him to the ground and punch him in the head and torso several times. *Id.* ¶ 49. Then, either Kester, Zenelovic, or both sprayed Scott in the eyes and mouth with pepper spray from a short distance. *Id.* ¶ 50. At no point did Scott accost the police officers, resist arrest, or threaten them in any way. *See id.* ¶¶ 35-58.

As a result, Scott sustained bruising and swelling on his torso, pain and irritation on his face and head, pain in his eyes, permanent damage to the vision in his right eye, and permanent nerve damage to his wrists and hands. *Id.* ¶ 93.

Afterward, Kester, Deterville, and Zenelovic falsified their reports of the incident to justify their use of force and the charges against Scott. *Id.* ¶¶ 95-97. Ultimately, Scott was charged with one count of driving while intoxicated, one count of resisting arrest, one count of driving the wrong way on a one-way street, and two counts of driving without a license.[2] Scott spent approximately seven weeks in jail because of these charges. *Id.* ¶ 99. All of the charges were dismissed or dropped for various reasons. *Id.* ¶¶ 101-105.

---

[2] The police officers discovered that Scott's license had been suspended after they arrested him. *See* ECF No. 16 ¶ 88.

**LEGAL STANDARD**

A complaint survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw reasonable inferences that the defendant is liable for the alleged conduct. *Iqbal*, 556 U.S. at 678.

In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted); *see also Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) ("As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.").

**DISCUSSION**

**I.     Defendants' Motion to Dismiss Scott's First Claim Is Granted Because It Is Vague, Conclusory, and Fails to Give Defendants Fair Notice of Its Basis**

Scott's first claim is styled as a "catch all" civil rights claim, alleging the violation of various rights secured under the Constitution and laws of the United States. The Court has seen this claim twice before;[3] Scott's counsel alleged a similar claim in two other cases before this Court. *See Lipford v. City of Rochester*, No. 16-CV-6266-FPG, 2017 WL 4344633, at *3-4

---

[3] The Court reminds Scott's counsel that, under Federal Rule of Civil Procedure 11(b)(2), an attorney who files a pleading with the Court certifies that the claims in it are warranted by existing law or a nonfrivolous argument for reversing existing law or establishing new law.

(W.D.N.Y. Sept. 29, 2017); *see also Keene v. City of Rochester*, No. 6:17-cv-06708-MAT, 2018 WL 1697486, at *3 (W.D.N.Y. April 7, 2018). In both of those cases, the Court dismissed the claim because it was vague, conclusory, and failed to give the defendants fair notice of the claim's basis. *See Keene*, 2018 WL 1697486, at *3. The Court will do the same here.

### II. Defendants' Motion to Dismiss Scott's Fifth Claim Is Granted Because He Does Not Allege that the Police Officers Acted Outside the Scope of Their Employment

Defendants next move to dismiss Scott's fifth claim against the City for negligent hiring, training, supervision, and discipline of police officers.[4] Specifically, Defendants argue that Scott has failed to allege that the police officers were acting outside the scope of their employment, which is precedent requires. *See* ECF No. 20 at 5 (citing *Velez v. City of New York*, 730 F.3d 128, 136-37 (2d Cir. 2013) and *Lipford*, 2017 WL 4344633, at *5). In response, Scott argues that his fifth claim is legally cognizable, that Defendants' reliance on *Velez* was misplaced because the claim in that case is alleged against the police officers and not the municipality, and that this Court must apply state law when ruling on a state-law claim. *See* ECF No. 24 at 25-28.

Each of Scott's arguments miss the mark. First, a state-law negligence claim is legally cognizable against a municipality, but Scott has failed to properly plead such a claim. *See Velez*, 730 F.3d 136-37. Second, the claim in *Velez* was not against the municipal employees; it was against the municipality. *See id.* ("To maintain a claim against a *municipal employer* for the 'negligent hiring, training, and retention' of a tortfeasor under New York law, a plaintiff must show that the employee acted 'outside the scope of her employment.'" (emphasis added)). Finally,

---

[4] Scott contends that Defendants move only to dismiss the portion of his fifth claim that refers to negligent hiring and that they ignore the parts that discuss negligent training, supervision, and discipline. *See* ECF No. 24 at 25-26. Scott is incorrect. Defendants refer to all negligence categories mentioned in Scott's fifth claim in their motion. *See* ECF No. 20 at 5 ("Rather, the claim is brought against the City of Rochester, alleging that the City has been negligent in its *hiring*, *retention*, *training*, *supervision*, and *discipline* of the defendant officers." (emphasis added)).

the Court is applying state law to make its ruling. The Second Circuit and this Court are indeed both federal courts, but their decisions in *Velez* and *Lipford* interpret state law, not federal law.

Moreover, even if Scott's arguments were valid, he did not allege that the police officers were acting outside the scope of their employment as required. *See Velez*, 730 F.3d at 136-37; *Lipford*, 2017 WL 4344633, at *5. His fifth claim therefore fails.

**III.    Scott's Three Theories of *Monell* Liability**

Defendants also move to dismiss Scott's ninth, tenth, and eleventh claims against the City, which each allege a different theory of liability under *Monell*. In their Motion, Defendants describe the claims as a deliberate indifference claim, a claim alleging an unconstitutional municipal policy, and a claim alleging an unconstitutional custom, respectively. *See* ECF No. 20 at 7, 12-14. Those descriptions do not match those in Scott's Amended Complaint; he labels them as a claim for failure to discipline police officers who use excessive force, another alleging a municipal custom, policy, or practice of fabricating charges against innocent individuals to conceal unlawful conduct, and, finally, one for deliberate indifference to the rights of individuals with mental illnesses. *See* ECF No. 16 at 29, 55, 66. To make matters more confusing,[5] Scott explains that the ninth claim is brought under a failure-to-discipline theory, not failure to train, and that all three claims plead an unconstitutional custom or practice. *See* ECF No. 24 at 14.

To provide some guidance through this thicket of theories, the Court will first briefly explain the applicable theories of *Monell* liability and how they are properly plead. The Court will then determine what theories each of Scott's claims put forth based on its review of the Amended

---

[5] Of course, these matters would likely be less confusing if Scott's counsel had complied with Federal Rule of Procedure 8 in drafting the Amended Complaint. It is neither a short nor plain statement of the claims at issue, as it contains large swaths of repetitive language and conclusory allegations within its seventy-two pages.

Complaint notwithstanding the arguments of Scott and the Defendants. Finally, the Court will rule on Defendants' Motion as to each claim.

### A. An Explanation of the Applicable Theories of Liability Under *Monell*

In *Monell*, the Supreme Court held that municipalities could be held liable under § 1983 and provided three clear principles. 436 U.S. at 690 ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies." (emphasis in original)). First, municipalities can be sued where an unconstitutional act "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* They can also be sued "for constitutional deprivations visited pursuant to governmental 'custom' even though a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91. The Supreme Court included customs in addition to official policy since "persistent and widespread discriminatory practices of state officials . . . could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id.* at 691 (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). Finally, the Supreme Court concluded that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* (emphasis in original).

In the years after *Monell*, the Supreme Court added to those three principles, culminating in its relatively-recent decision *Connick v. Thompson*, 563 U.S. 51 (2011). After reaffirming the Supreme Court's principles in *Monell*, the *Connick* Court explained that a municipality's failure to train its employees to "avoid violating citizens' rights" may constitute a governmental policy if its amounts to "deliberate indifference" to the rights of those citizens. *Connick*, 563 U.S. at 61

(citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985) (plurality opinion) and *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The *Connick* Court cautioned, however, that deliberate indifference is a "stringent standard of fault" that requires a showing that a municipal actor "disregarded a known or obvious consequence of his action" and that "a municipality's culpability . . . is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Tuttle*, 471 U.S. at 822-823 and *Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)).

*Connick* provided further guidance on how to establish deliberate indifference. First, it is "ordinarily necessary" to demonstrate a "pattern of similar constitutional violations by untrained employees." *Connick*, 563 U.S. at 62 (citing *Bryan Cty.*, 520 U.S. at 409). Such a pattern shows that municipal actors knew or should have known that their training failed to prevent constitutional violations, which may establish deliberate indifference. *See id.*

Second, the failure to train[6] must be "closely related" to the particular injury the plaintiff suffered, *see City of Canton*, 489 U.S. at 391, and the violation at hand must be similar to the violations in the pattern preceding it. *See Connick*, 563 U.S. at 62-63 (finding four previous violations were not similar enough to the instant violation to put the municipal actor on notice that training was inadequate).

### B. Scott Pleads Failure to Discipline, an Unconstitutional Custom or Usage, and Failure to Train in His Ninth, Tenth, and Eleventh Claims, Respectively

The Court now turns to determining what theories of Monell liability Scott pleads in his ninth, tenth, and eleventh claims. First, regarding his ninth claim, Scott's factual allegations center

---

[6] The Supreme Court's decisions regarding a municipality's liability for failure to train has been expanded to failure to supervise or discipline. *See Alwan v. City of New York*, 311 F. Supp. 3d 570, 578 (E.D.N.Y. 2018). All must amount to deliberate indifference to establish municipal liability. *See id.*

on the City's repeated failure to discipline[7] police officers against whom individuals brought complaints of excessive force. Specifically, Scott names five police officers—Officer Patrick Giancursio, Officer Mario Masic, Officer Alexander Baldauf, Officer Thomas Rodriguez, and Officer Joseph Ferrigno II—and contends that none were disciplined after repeated instances of using excessive force. Scott alleges that Giancursio received the Rochester Police Department's 2017 Officer of the Year Award in May 2017 while he was suspended pending RPD's investigation into his use of force against Alexander Grassies in April 2017. *See* ECF No. 16 ¶ 190. He further asserts that citizens filed excessive force complaints against Masic, Rodriguez, and Ferrigno.[8] *Id.* ¶¶ 211, 231, 238, 244, 246, 249. After all of these assertions, he claims that these officers were never disciplined in any way and that RPD's process of reviewing complaints of excessive force is ineffective and insufficient. *Id.* ¶¶ 193, 214, 235, 244, 246, 249, 254, 268-69.

In his tenth claim, Scott alleges a custom or usage of police officers falsely charging individuals with low-level crimes to justify their unlawful use of force. *Id.* ¶ 295. Scott notes that the RPD "favors" three crimes in particular: disorderly conduct, resisting arrest, and obstruction of governmental administration. *Id.* ¶ 307. He notes one example[9] of a police officer—Masic[10]—

---

[7] The Court's conclusion is further bolstered by his arguments against Defendants' Motion. *See* ECF No. 24 at 19 (police officers were "repeatedly charged with using excessive force, were never disciplined, and [the] failure to discipline" led to further uses of excessive force), 21 ("[Then-]Chief Sheppard exhibited deliberate indifference[.]"), 22 (Then-Chief Sheppard's "decision not to discipline [police officers] constituted an official municipal policy of deliberate indifference under a failure[-]to[-]discipline theory").

[8] The examples of excessive force against officers other than Masic, Rodriguez, and Ferrigno do not contain allegations that the individuals filed complaints against the officers for excessive force. Scott merely concludes that the officers used excessive force, an allegation that the Court is not obligated to accord a presumption of truthfulness.

[9] Scott provides two other examples of allegedly false charges brought against individuals, but in one case he does not allege that the charges were dropped, and in the other he does not claim that the false charges were brought to cover up the officer's use of excessive force. Consequently, those two examples does not match the allegations of this case.

[10] In this section of the Amended Complaint, Scott refers to Masic as "Mario 'Cowboy' ZENELOVIC." ECF No. 16 ¶ 314. Zenelovic is, of course, a Defendant in this action. The Court assumes that Scott meant to refer to Masic, given Scott's prior reference to Masic's first name, "Mario," and his nickname, "Cowboy." *See id.* ¶ 207.

charging an individual with obstruction of governmental administration to justify his use of force. *Id.* ¶ 314. The charges against the individual were eventually dropped for insufficient evidence. *Id.*

In his eleventh claim, Scott alleges that RPD failed to train its officers in techniques to effectively interact with individuals suffering from mental illnesses who were experiencing mental health episodes in their encounters with police. *Id.* ¶ 342-43. Scott notes three incidents where police officers allegedly used excessive force because they were ill equipped to interact with members of the public who were experiencing a mental health episode. *Id.* ¶ 345-49, 352.

### C. Defendants' Motion to Dismiss Scott's Ninth Claim Is Granted Because Scott's Allegations Do Not Demonstrate Deliberate Indifference

The Second Circuit recently held that "a municipal policy of deliberate indifference to the use of excessive force by police officers may be shown by evidence that the municipality had notice of complaints of the use of such force but repeatedly failed to make any meaningful investigation into such charges." *Outlaw v. City of Hartford*, 884 F.3d 351, 380 (2d Cir. 2018). Indeed, Scott alleges three instances in which individuals filed complaints against Rochester police officers and the City failed to meaningfully investigate the complaints. The Court is reluctant, however, to conclude that these three examples constitute the "pattern" required in *Connick* or the "repeated failure" mentioned in *Outlaw* such that the failure to discipline was City policy. *See City of Canton*, 489 U.S. at 390.

First, the alleged incidents are not similar enough to this case. Of course, those incidents involved excessive force allegations similar to this case. And Scott alleges that none of those officers and none of the Defendants in this case were ever disciplined for their alleged use of excessive force. However, the similarities stop there. Scott provides no pattern of violations in

which excessive force was used against individuals who performed sobriety tests or even against individuals while officers were performing a traffic stop.

Second, the failure to discipline is not closely related to Scott's particular injury. Scott does not explain how the City's failure to discipline police officers made Kester highly likely to use excessive force on Scott in the context in which he allegedly used it. *See Bryan Cty.*, 520 U.S. at 412 ("[A] finding of culpability must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." (emphasis in original)). Scott alleges only that the City failed to discipline Kester and other police officers in conclusory fashion. To surmount the "stringent standard of fault" that is deliberate indifference, *Connick*, 563 U.S. at 61, Scott must draw a direct line from the City's repeated failure to discipline police officers who use excessive force to Scott's injury, *see City of Canton*, 489 U.S. at 390-91. He failed to do so, and so the claim must likewise fail.

> **D. Defendants' Motion to Dismiss Scott's Tenth Claim Is Granted Because He Failed to Show that the City's Custom or Usage of Filing False Charges Was So Widespread That It Constituted a Municipal Policy.**

Scott alleged three instances in which police officers filed charges that were eventually dropped; in only one of those cases did the police officer file the charges to cover up an unlawful use of force. This single example of a police officer fabricating charges to hide an excessive use of force coupled with the allegations here simply cannot establish a "persistent and widespread" custom that carries the force of law. *See Monell*, 436 U.S. at 691. Consequently, this claim also fails.

> **E. Defendants' Motion to Dismiss Scott's Eleventh Claim Is Granted Because He Fails to Properly Allege a Failure-To-Train Claim**

Scott's eleventh claim fails for two reasons. First, he has not established a connection between the City's alleged failure to train its officers to interact with individuals who have a mental

illness and the violation of those individuals' federal rights. *See Bryan Cty.*, 520 U.S. at 404 ("[A] plaintiff . . . must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."). The Defendant police officers were allegedly aware of Scott's PTSD diagnosis and panic attack during their encounter with him, but Scott does not claim that the officers violated his rights *because* of them.

Even if he had, the allegations in his eleventh claim do not properly allege a failure-to-train claim. At several points, Scott claims that the City provides absolutely no training to officers to deal with individuals with a mental illness. *See* ECF No. 16 ¶¶ 342 ("[The] City . . . does not provide any training . . . regarding how to safely and lawfully interact with individuals suffering from either chronic or acute mental illnesses."), 352 ("The Defendant City apparently admits that [it] fails to train its officers on how to properly interact with individuals who are suffering from chronic and/or acute mental illnesses."). He then alleges that the City *does* provide training, albeit on a voluntary basis, and has a response team specifically tasked with interacting with individuals who are "emotionally disturbed." *Id.* ¶ 352. Of course, the City's training could be inadequate, but Scott does not allege anything of the sort. Consequently, this claim is also dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 19, is GRANTED.

As a result, the second, third, fourth, sixth, seventh, and eighth claims remain.

IT IS SO ORDERED.

Dated: September 27, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court